SAMUEL WARNER & wife *vs.* ERASMUS D. BEACH.

Revocation of a will cannot be implied by law from the birth of a child to the testator, contemplated in the will; the death of the testator's wife, and of another child, leaving issue; the testator's insanity for forty years, from soon after the making of the will until his death; and a fourfold increase in the value of his property, so as greatly to change the proportion between the specific legacies given to some children and the shares of other children who were made residuary legatees.

APPEAL from a decree of the judge of probate for the county of Hampden, admitting to probate the will of Clark Cooley. The only reason of appeal relied on was, " that, after the execution of said will, the circumstances of said testator, and the situation and value of his property, so greatly changed as to operate a revocation of said will." Trial before *Thomas*, J., who was of opinion that the facts offered to be proved would not show a revocation of the will, and reported the case to the full court. The substance of the will and of the evidence offered at the trial is stated in the opinion.

The case was argued in writing in June last by *H. Morris*, for the appellants, and *E. W. Bond*, for the appellee.

SHAW, C. J. This is an appeal by an heir at law, against the probate of the will of Clark Cooley. The ground is, that the will was revoked by lapse of time and change of circumstances. These circumstances are very peculiar in point of fact, and can hardly be expected to occur again.

The testator made his will, in due form and duly executed, in May 1811, and died in 1854. It is not now contended that he was not of sound mind when the will was executed, though it was intimated in the reasons of appeal; but it is found by the case that he soon after became insane, and so continued to the time of his death. When the will was made he had four daughters and two sons, and a third son was soon after born. Provision was made in the will for the child thus expected, in the respective contingencies of being a son or a daughter. By the will, after making provision for his wife, and for a legacy of four hundred and fifty dollars to each of his daughters, he gave all

the residue of his estate, real and personal, to his sons. The wife died in the lifetime of the testator, also one of the daughters, leaving children still surviving. These were all the changes which took place in the testator's family. The real estate on which the will may operate remains the same; but has risen in value, by the general advance in the money price of estate, to about twenty thousand dollars, being about four times its value when the will was made. It is remarkable that no greater changes occurred in such a family during so long a course of years.

Our statute of wills, in providing that wills shall not be revoked, unless by cancelling, or by another will, &c., excepts revocations implied by law, from subsequent changes in the condition and circumstances of the testator. Rev. Sts. *c.* 62, § 9. What those changes are, the statute does not intimate; it is left to be decided by the general rules of law.

Where a partial revocation is set up, arising from a change in the condition of the property devised; as by an alienation of the estate, *Hawes* v. *Humphrey*, 9 Pick. 350; or by a change in the devisor's title or interest in it, *Ballard* v. *Carter*, 5 Pick. 112; such revocation is easily deduced from the facts of each case, under familiar rules of law. But an entire revocation by implication of law is limited to a very small number of cases. The marriage of a feme sole is held to be a revocation of her previous will, or at least a suspension; for there may be some doubt on that point. But in case of a man, a rule has been adopted from the civil law, after some struggle, but is now firmly established, that marriage and the birth of a child shall be held to be an entire revocation. It is founded on the presumption, that, if the will had been made under the altered circumstances, it would not be made as it was. It might exclude one who would be heir to the whole estate. Even after the rule had gone thus far, it was still regarded as doubtful whether it could extend to a posthumous child. But this, on great deliberation, was held to be within the principle of the rule. *Doe* v. *Lancashire*, 5 T. R. 49.

But where the facts, on which such revocation is ordinarily

implied, have been contemplated and provided for in the will, no such presumption arises, and the will is not revoked. *Kenebel* v. *Scrafton*, 2 East, 530.

We state a few of these leading cases, and the principles on which they are founded, to show how far the present case is from coming within the exception of the statute of wills, respecting the revocation of a will by implication of law, from the changed condition of the testator. The death of the wife in the present case could have no effect. She had a life interest only and the death of a devisee is a contingency always in view The death of a daughter, under any circumstances, could have no such effect; but in the present case her legacy would not lapse, as she left several descendants, who would take it. Rev. Sts. *c.* 62, § 24. The birth of a posthumous child could have no effect, for his birth was contemplated and provided for by the will ; besides, all children not provided for by will, including posthumous children, are provided for by law. Rev. Sts. *c.* 62, §§ 21, 22. *Bancroft* v. *Ives*, 3 Gray, 367.

2. The only other circumstances, intimated as ground of revocation of this will, are the increase in value of the real estate, and the long continued insanity of the testator, which disabled him from altering his will. The former circumstance alone would have no weight; and it is only the great length of time, during which this disability lasted, which appears to give it any plausibility. It is said that a will is ambulatory during the life of the testator, because he may at any time alter or change it. If this could be held to mean that he must always have the capacity to revoke, it would follow that any attack of insanity would operate as a revocation, which would prove far too much. And we have no law, no rule or maxim, intimating a distinction in this respect between the existence of insanity for a longer or shorter period of duration. No case was cited by the counsel, and we are aware of none, where any insanity after making a will is held to revoke the will. In *Forse & Hembling's case*, 4 Co. 61 *b*, the court, in commenting upon the ambulatory character of a will, to the end of life, suspended in case of a woman who makes a will and marries, and thus bv her own act is disqualified

by the disability of coverture, say: " It would be against the nature of a will to be so absolute, that he who makes it, being of good and perfect memory, cannot countermand it. But when a man of sound memory makes his will, and afterwards, by the visitation of God, becomes of unsound memory, (as every man, for the most part, before his death is,) God forbid that this act of God should be in law a revocation of his will, which he made when he was of good and perfect memory." This was not an adjudicated point in the case; but it was put by way of illustration, as an unquestionable rule of law, and, as such, is an authority entitled to respect.

The court are of opinion, that the decision of the probate court, adjudging the will of Clark Cooley, under the circumstances, not to have been revoked, was correct, and that the decree allowing and admitting it to probate must be affirmed.

*Decree affirmed.*