## M. P. JONES, Guardian, *v.* JANE C. MOSELEY *et al.*

1. PROBATE COURT: WILL, WHEN TO ADMIT TO PROBATE.—The Probate Court may take the probate of a will as soon as it is propounded, leaving the parties interested to contest its validity in some subsequent proceeding; if objections are regularly filed so soon as the paper is presented, the court must dispose of the objections before it is admitted to probate.

2. EVIDENCE: WILL: DECLARATIONS OF TESTATOR ADMISSIBLE TO SHOW AN IMPLIED REVOCATION.—An implied revocation of a will may be shown by the declarations of the testator, made after the execution of the will.

3. WILL: IMPLIED REVOCATION FROM CHANGE OF MORAL TESTAMENTARY DUTIES.—A will is revoked by implication, when, after its execution, there is a material change in the testator's circumstances, imposing new moral testamentary duties: the change must be in material relations, and not in feeling, or mere matter of sentiment.

4. SAME: CAUSE IN JUDGMENT.—S., in his will, disinherited M., one of his children, to whom at the time he was unfriendly. Afterwards S. became reconciled to M., made no alteration in his will, and on his death-bed declared he wanted all of his children to be equal. Held—That the change in the feelings of S. to M. imposed no new testamentary duties, and did not revoke his will.

APPEAL from Probate Court of Kemper county. Hon. W. W. Chisolm, judge.

*R. G. Rives* for appellants.

The guardian has a perfect right under the statute to bring this appeal, because the minors, being legatees under the will, have an interest therein; and unless the judgment below is reversed, they are forever barred by it. They will be injured by the judgment, and therefore are to receive advantage by the reversal thereof. *N. O. I. & G. N. R. R.* v. *Rollins*, Administrator, 36 Miss., page 386. *Flournoy* v. *Smith*, 5 How., page 62.

The court erred in regarding the caveat of Moseley and wife, and ordering the issue of *devisavit vel non* at the time it did.

The statute, Rev. Code, page 434, section 43, requires the court to take immediate probate of the will, upon its presentation for that purpose, leaving contestants to file their petition contesting its validity if they wish. The true issue in this case was *revocavit vel non.* It is doubtful whether contestants could have framed a petition or bill not demurrable under authority of *Payne* v. *Banks,* 32 Miss., page 292.

The court erred in permitting the testimony of contestants' witnesses to go before the jury. Their object was to prove an *express* revocation, or to establish implied revocation by showing change of circumstances. The evidence tending only to show the parol expressions of testator, unconnected with the will, was inadmissible for either purpose. Rev. Code, page 432, section 35; 1 Jarm. Wills, 355; ib. 349, bottom note; ib. 186, bottom note; 1 Lom. Exrs. 48; Chilt. on Probates, 59; *Hairston* v. *Hairston,* 30 Miss. 301.

It was also inadmissible to establish *implied* revocation by change of circumstances arising since the will was made. These must be such as to produce change, not merely in testator's *affections and feelings,* but in his *obligations and duties.* Not every change, however great, will operate as a revocation. 4 Kent Com. 520; 1 Williams Exrs. 152.

We believe no definite case of implied revocation can be found, unless under the following circumstances, viz.: 1st. Mistake of testator as to the life or death of some proper object of his bounty; 2d. Subsequent marriage and birth of issue to testator, or marriage alone of testatrix; 3d. Incompatible disposition of property by subsequent will; 4th. Change of testator's estate or interest in devised property; 5th. An agreement to convey the property which equity would enforce; 6th. An inoperative conveyance showing intention to convey, and revoke the will; 7th. Disposition of property by codicil in writing, inconsistent with the will; 8th. Republication of a former will. 4 Kent Com. 521, 527, 528, 530; 1 Jarm. Wills, 148, 157, 169, 183, 186; 1 Williams Exrs. 107, 152, 159, 166; 1 Lom. Exrs.,

48, 54, 55, 59, 60; Chilt. on Probates, 69, 70, 75; *Garrett* v. *Dabney*, 27 Miss. 335.

Contestants' testimony tended to establish no one of these circumstances. Does the fact of his being *angry* at his daughter, and, at his death, becoming reconciled, show change of circumstances sufficient to produce change in his *obligations and duties?* Not at all. He was under no obligation to provide for her by will; and had he been, the obligation would have been the same, *angry or reconciled.* The change was merely in his feelings and affections, and the evidence was clearly inadmissible.

The court erred in charging the jury, at the instance of contestants, that there are " various other modes not laid down in the statute," besides express or implied revocation, " by which a will may be revoked." The meaning of the charge is, " A will may be revoked expressly, by implication, and by various other modes *neither express nor implied !* " But even had the charge been correctly drawn, it would have still been objectionable, as there was no proof of change in testator's duties or obligations. Again : there being no evidence of any other disposition of the property embraced in said instrument, by testator after its execution, the charge of the court upon the supposed case was upon an abstract question, and therefore erroneous. *Payne* v. *Green*, 10 Miss. 507; *Lewis* v. *Black*, 27 Miss. 425 ; *Wright* v. *Clarke & Robinson*, 34 Miss. 116.

Under Rev Code, page 504, section 161, it is not necessary that notice be taken, in the bill of exceptions, of objections to charge. *Drake* v. *Surget*, 36 Miss. 458.

The court erred in overruling executor's motion for new trial. On this point we only ask the consideration of the court upon the instructions and evidence submitted to the jury, and their verdict thereupon.

No counsel appeared for appellees.

HANDY, C. J., delivered the opinion of the court.

This was an issue of *devisavit vel non* in the Probate Court. Peter E. Spinks, who was appointed executor by the last will

and testament of John Spinks, deceased, filed his petition in the Probate Court for the probate of the will, alleging the due execution of the will propounded, which bore date 28th May, 1859, and that the testator died on the 28th August, 1861. By the will, his estate, real and personal, was to be equally divided between eight of his children, and the appellants, the children of his daughter, Jane Jones, omitting his daughter, Jane C. Moseley, wife of T. G. Moseley, and leaving her nothing. At September Term, 1861, Mrs. Moseley and her husband filed their *caveat*, and thereupon an issue was made up to try whether the will propounded was the last will and testament of the testator. This issue was tried at December Term, 1861, and the executor introduced the subscribing witnesses, who proved the execution of the will according to the requirements of the statute, and rested the case. The *caveators* then introduced one Oliver, who was admitted against the objection of the executor, and who testified that he was at the house of the deceased a short time before his death, near his bedside, and had hold of his hand; that deceased said he wanted to talk about his business; that witness asked him what he wanted to say about it, and he then said, *he wanted his children all to be equal ;* that witness asked him who he wanted to attend to his business, and he said he wanted his son Peter to attend to it; that witness told him he thought it would all be attended to, and that deceased then said, placing his hand upon his breast, "Peace, peace;" that witness asked him what peace; to which he replied, peace of mind, and that he had no animosity against any one living; that deceased did not, in this conversation, say anything about his will. Also Presley Spinks, who testified that, at the time of making this will, the deceased was mad with his daughter Jane Moseley, and that during his last sickness or before, he became reconciled to her, and that she waited on him during his last sickness. Also Peter Spinks, the executor, who testified the same in substance as the last-named witness. Also C. K. Hale, who testified the same as the last two witnesses with reference to the feelings of the deceased towards his daughter Jane Moseley; and further, that while the deceased was mad with her, he told witness that

Jones *v.* Moseley et al.

he intended to make a will and disinherit her, and that witness advised him to do so. There was also proof that the will was in the law office of Judge Jones, in the town of DeKalb, and that Jones was at the house of deceased a few days before the conversation above stated.

The executor, upon the production of these several witnesses to prove declarations of the deceased made during his last sickness and a short time before his death, objected to their introduction for that purpose, but the objection was overruled; and after the testimony of said several witnesses was delivered, the executor moved to exclude it from the jury, and the several motions were overruled, and the executor excepted.

The court then gave sundry instructions to the jury at the instance of both parties, and the jury returned a verdict against the will. The executor moved to set aside the verdict, and for a new trial; but the motion was overruled, and hence this appeal.

The first error assigned is, that the court regarded the *caveat* and ordered the issue, at the time it did, which was at the term at which the will was propounded for probate.

It is said that it was the duty of the court, under the statute, Rev. Code, 434, article 43, to take the probate of the will immediately on its being presented for that purpose, leaving the parties to contest its validity by subsequent proceedings. This is a misapprehension of the provisions of the statute. It authorizes the court to proceed immediately to take the probate, but it is not imperative as to the time of doing so. It was never intended that the court should proceed to take the probate, notwithstanding objections to it were regularly filed as soon as the paper was propounded, or before the matter of probate was proceeded with. For the same statute provides elsewhere for the appointment of an administrator *ad colligendum*, pending a contest about a will, and until probate be granted. Rev. Code, 437, article 56.

The second assignment is, that the court erred in admitting the testimony of the witnesses in relation to the conduct and declarations of the deceased, and in overruling the motion of

the executor to exclude that testimony from the jury after it was given.

It is not alleged that this evidence tended to show a positive revocation of the will; but the purpose for which it was introduced was to show an implied revocation, resulting from an alteration of the circumstances of the testator, by which new moral duties had been devolved on him after the execution of the will, which may be presumed to have caused a change of his intention towards his daughter. If the evidence tended to show such a state of facts in this case, it was properly admitted, otherwise it should have been excluded on the executor's motion. The question, then, is whether the evidence is of this character, and upon this the whole case depends.

The rule upon the subject of implied revocations in cases of this sort, is thus stated in the elementary works, and in the leading cases upon the subject:

"If the testator's circumstances be so altered that new moral testamentary duties have accrued to him, subsequent to the date of the will, such as may be presumed to produce a change of intention, this will amount to an implied revocation." 1 Lomax Exrs. 55.

Sir John Nicholl says, there must be "such a change in the condition of the deceased, such new obligations and duties, that they raise an inference that a testator would not adhere to a will made previous to their existence, considering it an act of moral duty to revoke that disposition;" "and if there does not arise such a state of circumstances as to produce new duties, if the change is provided for, there is no reason to presume a revocation." *Talbot* v. *Talbot*, 1 Hagg. (Eng. Eccl. Rep.) 705. The same learned judge lays down the rule in another case, that there must be "such an alteration of circumstances arising from *new moral duties*, accruing subsequent to the date of the will, as by necessary implication creates an intention to revoke;" and he further states, with still more precision, that "courts have required that the rule shall have for its basis a change of intention, produced by, and to be presumed from, some new

moral obligation arising after the will is made." 1 Phillim. (1 Eng. Eccl. Rep.) 447 ; *Johnston* v. *Johnston.*

By these rules, it is essential that there should be *a change in the testator's circumstances,* producing new moral duties, after the execution of the will, in order to effect a revocation. This change must be in his condition as affecting the substantial re-lations of the parties, such as subsequent marriage, and the birth of a child or children ; a will executed under the mistaken belief that a child not provided for was dead ; marriage and the birth of a posthumous child, and the like. In all such cases, a moral duty devolves upon the testator, by the happening of the facts stated, to make provision for the support and welfare of the child ; which creates the strongest presumption that the testator would not have made the will, if he had anticipated that such a state of facts would take place, and hence that it will be pre-sumed he intended that it should not remain in force, under such circumstances. But the change must be in material rela-tions, and not in mere matter of sentiment.

No case has been brought to our notice, nor have we been able to find one, where the doctrine of implied revocation has been applied to a case of mere change of feelings by the tes-tator towards a party, subsequent to the date of the will, with-out a substantial change of circumstances, producing new obliga-tions ; and we think that such a case would not be reconcilable with the principle on which the doctrine rests. It is true, that feelings of affection from a parent to a child are a high moral duty, and that a change from feelings of animosity to those of fondness and attachment is highly commendable. But this alone is not such a change of his condition, and such a ground of new obligations and duties, as to come within the principle on which the doctrine is founded ; for the alteration of the *material condition* of the testator is the basis of the rule, and the matter of personal feeling is but a secondary and incidental consideration, which, by itself, would not justify the application of the doctrine.

In this case, there was no alteration of the condition of the testator, except in point of feeling towards his daughter. His

duty to aid in her support and comfort, by his bounty, was the same, morally, when he made his will, as when he came to his death-bed. All that the evidence amounts to is, that he had become reconciled to his daughter, and that he said he wanted his children all to be equal—that is, as to his property; but never said anything about his will. His declaration about all his children being equal is entitled to no legal force, where it appears that the basis on which the principle of implied revocation, in such cases, is founded, is wanting—namely, a change in the condition of the testator, affecting his duties and obligations to promote her welfare in life, and to aid in her support and comfort. If the basis had been laid, showing such a change of duties and obligations, after the execution of the will, then his declarations might have been proper and important, to show his willingness to respond to those duties and obligations, and an intention to revoke his will: *Johnston* v. *Johnston, supra;* but without such foundation, the declarations cannot, in law, have this effect, and are incompetent to show the *animus revocandi.*

We think it clear, therefore, that the evidence was insufficient to establish a revocation of the will, and that the motion to exclude it from the jury should have been sustained. And it follows that the instructions given at the instance of the *caveators* were erroneous, because there was no sufficient evidence to justify them.

Let the judgment be reversed, the verdict set aside, and the case remanded for a new trial.