Nos. 24,707 and 24,841

BESSIE E. ATEN, NORA E. JONES et al., *Appellants,* v. EDWIN E. TOBIAS et al., *Appellees.*

SYLLABUS BY THE COURT.

1. WILL—*Interpretation—Written Consent of Wife to a Bequest by Her Husband of Real Estate Standing in Her Name Bars the Rights of All Persons Claiming under or through Her.* Where a testator devises property the title to which is held by his wife and she gives her written consent to such testamentary disposition of it, the wife thereby in effect renounces her right of ownership in the devised property and bars all persons whose rights thereto must be claimed under and through her.

2. SAME—*Trust Created by Will—Not Defeated by Subsequent Provisions of the Will.* A precedent particular estate in lands sufficient to support a devise of the remainder is created by the erection of a trust estate for the duration of the lives of certain designated beneficiaries who are to enjoy the net rents and profits thereof; and such precedent particular estate is not defeated because the beneficiaries are forbidden to alienate or encumber it during their period of enjoyment.

3. SAME—*Partial Disinheritance of Two Testators Daughters Because of Ill Will of Testator toward Their Husbands, and Subsequent Reconciliation Does not Operate to Revoke any Portion of the Will.* The fact that a testator who in his will partially disinherited two daughters because he disapproved of their marriages and disliked their husbands but afterwards became reconciled to the marriages and came to have a high regard for their husbands and often declared the daughters should share equally in his personal estate with his other children, does not operate to revoke that portion of the will which made disposition of the testator's personal estate.

4. SAME—*Great Increase in Value of Personal Property Between the Time of Making the Will and the Testator's Death Did not by Implication Amount to a Revocation of the Bequests of Personal Property.* A great increase in a testator's personal estate between the time of the making of his will when it was worth $8,000 and the time of his death seven years later when it was worth $90,000 which increase grew out of the testator's savings of income and not from any change in the nature of the property owned by. him at the time his will was made, does not by implication of law amount to a revocation of the bequest of the personal estate.

5. SAME—*Equitable Adjustment of the Costs of These Actions.* Where a life estate in real property is devised to six beneficiaries with remainder to grandchildren of the testator and his consenting wife, and two of the beneficiaries attack the will for the purpose of judicially freeing the realty from the life estate and expanding their own interest and the interests of the other four beneficiaries therein into an allodial fee, and the four other beneficiaries are made defendants and make default, and the real and successful defense to the action is made by the grandchildren whose interests were chiefly imperiled by the action, the costs of the litigation should be borne proportionately by the six beneficiaries of the life estate, and may for convenience be paid by the executor and charged to their account.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed November 10, 1923. Modified and affirmed.

C. M. *Williams* and C. D. *Martindell,* both of Hutchinson, for the appellants.

C. E. *Branine,* H. R. *Branine,* both of Hutchinson, *Ben S. Jones,* and *Walter W. Stahl,* both of Lyons, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: These appeals pertain to an action to set aside a will and matters incidental thereto. The first was taken from a ruling on the pleadings; the second is from the judgment on the merits.

Most of the litigants are children or grandchildren of the late Cyrus Tobias of Rice county. Edwin E. Tobias, a son of the testator, is a defendant personally and also in his capacity as exec-

utor. Defendant Emma Mason was a daughter of Cyrus by a former wife. Defendant Valentine O. Enders was a son of Mrs. Tobias by a former husband.

Cyrus Tobias and his wife in their lifetime had accumulated considerable real estate, some 1,400 acres of land or more, and had a rapidly growing personal estate. The title to 320 acres known as their home place was held by the wife. In 1913 Cyrus Tobias made a will, disposing of all his property including the home place. In substance the will gave to his wife, Susan E. Tobias, their household goods, $10,000 in cash, and a life interest in the home place, of which Susan was then the title holder.

The immediate family of Cyrus and Susan consisted of grown sons and daughters, Edwin, Katie, Bessie and Nora who were born to Cyrus and Susan; Emma, daughter of Cyrus; and Valentine, son of Susan. The will bestowed on these six persons a life estate in the rents and profits on the home place, if the testator should outlive Susan, and it also devised to them a life estate in all the other realty owned by Cyrus.

The remainder estate in all the lands of Cyrus, including the home place, was devised to the grandchildren, including the children of Emma Mason and the children of Valentine O. Enders, per capita and not per stirpes. Certain details in the will, specifying the executor's powers, placing restrictions on the powers of life tenants to alienate, and as to the disposition of the interest of any child or grandchild who might die before the time of entry and enjoyment of the remainder estate by the grandchildren may need little attention here.

The personal estate was bequeathed in equal shares to the daughter Katie and to son Edwin and to the stepson Valentine.

Susan gave her written consent to the will at the time it was executed. She died intestate in 1920, and Cyrus died in 1921. Meantime the personal property of Cyrus vastly increased between the making of his will in 1913 and the time of his death in 1921. To develop the questions raised between the litigants, the will must be largely reproduced:

### "LAST WILL AND TESTAMENT OF CYRUS TOBIAS.

"It is my desire, and will in which my wife, Susan E. Tobias, has expressed and does express a cordial concurrence and approval, to reserve intact the bulk, body and substance of the real estate of which I may die seized or possessed for the grandchildren of either and both myself and my wife, now living or hereafter to be born and in the interpretation and execution of the terms of this will the foregoing condition of the minds of myself and wife shall be born in mind. To this end and with this view and purpose, I give, devise and bequeath all property both real and personal which I may own at the time of my death as follows:

"First: I give, devise and bequeath unto my wife Susan E. Tobias should she survive me, for and during the term of her natural life, our home farm, described [description] together with all the rents, issues, profits and proceeds of said half section of land. I further give, devise and bequeath unto my said wife if she should survive me, all our household and kitchen furniture.

"Second: I give, devise and bequeath unto my son Edwin E. Tobias, my stepson Valentine O. Enders and my daughters Nora E. Jones, Kate V. Cherpital, Bessie E. Aten, and Emma S. Mason, share and share alike for and during term of their natural lives only as hereinafter, in this will, limited, defined and explained after the death of my wife Susan E. Tobias or after my death if I should survive my wife, the [home place]. Out of the rents and issues of said real estate there shall be first paid annually, by my executor, all taxes charges, and assessments thereon, and the residue of all rents, issues, profits, and proceeds shall be divided equally share and share alike between and among the six legatees, above, in this paragraph named.

"Upon the death of any or either of such six legatees, if he or she shall leave surviving a child or children, such child or children shall take the place and be entitled to the share of its or their parent, so long as any of the above named six legatees may live. . . .

"Upon and after the death of all of said six legatees above named the said half section of land shall be and become the property in fee simple, of the grandchildren of myself and wife, or either of us, being children of any of the above named six legatees who may leave a child or children surviving.

"Upon the vesting of said real estate, in fee simple, in the grandchildren of myself and wife, or either of us, all such grandchildren shall take and receive equally, share and share alike *per capita* and not *per stirpes.*

"Third: I give, devise and bequeath unto my son Edwin E. Tobias, my stepson Valentine O. Enders and my daughters Nora E. Jones, Katie V. Cherpital, Bessie E. Aten and Emma S. Mason, share and share alike for and during the term of their natural lives only, as hereinafter, in this Will, limited, defined and explained, all the rest residue and remainder of the real estate of which I may die seized or possessed, wheresoever the same may be situated.

"Out of the rents and issues of said real estate, there shall be first paid annually, by my executor, all taxes, charges and assessments thereon, and the residue of all rents, issues, profits and proceeds thereof shall be divided equally

share and share alike, between and among the six legatees above, in this paragraph named. .

"Upon the death of any, or either of such six legatees, if he or she shall leave surviving a child or children, such child or children shall take the place and be entitled to the share of its or their parent, so long as any of the above named six legatees may live. . . .

"Upon and after the death of all of said six legatees above named all of the said real estate shall be and become the property in fee simple, of the grandchildren of myself and wife or either of us, being children or any of the above named six legatees who may leave a child or children surviving.

"Upon the vesting of said real estate in fee simple, in the grandchildren of myself and wife, or either of us all such grandchildren shall take and receive equally, share and share alike, *per capita* and not *per stirpes*.

"Fourth. It is my will that neither said Edwin E. Tobias, Valentine O. Enders, Nora E. Jones, Katie V. Cherpital, Bessie E. Aten, or Emma S. Mason, nor any nor all of them shall have any right, power, or authority to sell, convey, mortgage or otherwise encumber any of the real estate in this will disposed of devised and bequeathed, except as in the next succeeding paragraph of this will provided. Any attempt to sell, convey, mortgage, or place a lien upon said real estate, or any part thereof or interest therein in contravention of the terms of this will, shall be absolutely nugatory and void.

"Fifth. My executor, hereinafter named, may, by and with the sanction of the Probate Court sell, convey and make good title to any and all of the following described real estate, to-wit: [certain lands described.]

" . . . The proceeds of all such real estate sold shall, within a reasonable time, be by my executor, with the sanction of the Probate Court, invested in other real estate yielding reasonable income.

"The title of any and all real estate so purchased, shall be taken in the name of my executor, as trustee, and shall be held by him for the benefit of those entitled thereto under the provisions of this will under the same conditions, and according to the devises and bequests, and for the benefit of the same devisees and legatees, as named for the real estate hereinbefore devised and bequeathed.

.   .   .   .   .   .   .   .   .   .   .   .

"Seventh. I give, devise and bequeath unto my wife, Susan E. Tobias, the sum of Ten Thousand Dollars, ($10,000) to be paid out of my personal estate, within one year after my death. In case my personal estate shall not be sufficient after the payment of my debts and the costs of administration, to pay this legacy of $10,000 then it is my will that any deficiency therein shall be paid, as promptly as practicable out of the net income of the real estate owned by me at the time of my death (except the net income of the S. ½ of Sec. 17, 20, 8, our home place which is expressly reserved for my wife, Susan E. Tobias).

" . . . In case my wife should die before me, then it is my will that all of said sum of $10,000 arising from personal property be disposed of as a part of the residue of my personal property, in the manner and to the same persons as specified in the next succeeding (8th) paragraph of this will.

Aten v. Tobias.

"Eighth. I give, devise and bequeath unto my son, Edwin E. Tobias, my stepson Valentine O. Enders and my daughter, Katie V. Cherpital all the rest, residue and remainder of the personal property, of which I may die seized or possessed and which may remain after the payment of my just debts, funeral expenses and costs of administration, all of which shall be paid out of my personal property.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Ninth. I hereby nominate, constitute and appoint my son, Edwin E. Tobias, to be the executor of the will  .  .  .                    CYRUS TOBIAS."
    [Witnessed.]

.    .    .    .    .    .    .    .    .    .    .    .

"State of Kansas, Rice county, ss.:

"I, Susan E. Tobias, wife of the within named testator, Cyrus Tobias, do state and declare that before the execution of said Last Will and Testament by said Cyrus Tobias, I read the said instrument, and said instrument was fully, slowly and carefully read over to me, and its provisions were explained to me, and my rights thereunder, and also my rights under the law, were fully explained to me; and I do now, after fully understanding my rights under the law, elect to take under the within and foregoing will and according to the terms and provisions thereof and do freely consent to the same, and do now, at Lyons, Kansas, on this 8th day of December A. D. 1913, in the presence of .  .  .  as witnesses fully ratify, approve and confirm the said Last Will and Testament of Cyrus Tobias.                    SUSAN E. TOBIAS."
    [Witnessed.]

The plaintiff's petition set out four causes of action. In the first count, they alleged that Susan E. Tobias died seized of the half section to which she held the title and which is designated in the will of Cyrus as the "home farm" or "home place." Plaintiffs prayed for partition of this half section.

The second count alleged that the provisions of the will devising the other lands of Cyrus were inconsistent, repugnant, ambiguous and uncertain, and prayed for an adjudication that such provisions were null and void.

The third count has been abandoned.

The fourth count alleged that at the time of the making of the will, in 1913, Cyrus Tobias had a personal estate valued at $8,000, that at his death seven years later this personal estate had increased to $90,000, that the bequest of all the personal estate to Edwin, Valentine and Katie, was so made because in 1913 the personal estate was small and was contingently charged with a bequest of $10,000 to Susan; that the other daughter Emma had been given 80 acres of land; and that the testator had partially disinherited the plaintiffs, Bessie and Nora, because he disapproved of their mar-

riages and disliked their husbands, but that such grievance towards plaintiffs and prejudice against their husbands had altogether disappeared, and that testator afterwards—

"Repeatedly expressed himself as being greatly pleased with the plaintiffs' husbands and with plaintiffs by reason of their said marriage, and repeatedly stated to friends and others that plaintiffs should share equally with his other children in said personal estate."

On this alleged reconciliation and because of changed circumstances through the great increase in the personal estate of Cyrus, plaintiffs prayed an adjudication that the provisions of the will disposing of the personal property had been revoked.

To this petition the executor filed a general demurrer. Similar demurrers were filed by the guardians *ad litem* for the grandchildren to whom the real estate in remainder was devised.

These demurrers were sustained as to the second, third, and fourth counts and overruled as to the first. This ruling is the basis of plaintiffs' appeal in case No. 24,707.

To the first count, the executor and the guardians *ad litem* for the grandchildren filed answers and cross petitions, in which they admitted the relationship of the parties litigant, admitted that the legal title to the home place was in the mother, that she died intestate before Cyrus, and set up the consent of Susan to the will of Cyrus—

"That by the express provisions of the confirmation and election of Susan E. Tobias attached to the will of Cyrus Tobias, deceased, the said Susan E. Tobias was estopped at all times during her lifetime to claim a larger estate in said half section of land than was given to her by the will of Cyrus Tobias, deceased, and that the said Susan E. Tobias died intestate; that the said plaintiffs in this action are heirs of Susan E. Tobias, deceased, and can take no larger estate in said half section of land than the said Susan E. Tobias could have taken if she had outlived Cyrus Tobias. . . .

"On account of all the above facts set out the said Susan E. Tobias in her lifetime waived any and all right to claim a larger estate in said half section of land than was given to her by the will of Cyrus Tobias, deceased. That on account of the facts above set out and on account of the fact that after the death of the said Susan E. Tobias [plaintiffs] allowed Cyrus Tobias to at all times during his lifetime and after the death of his wife, fully manage and control and take all of the rents and profits and to treat said half section of land as though he was the owner thereof, waived any and all rights to said half section of land, other than the interest given to them by the will of Cyrus Tobias."

The cross petitions of the executor and guardians *ad litem* prayed for a construction of the will and that the rights and duties of the

Aten v. Tobias.

executor thereunder be defined, and that the will be sustained in all its parts. The other defendants, being all the life tenants of the real estate except the plaintiffs, filed no answer or other pleadings and remained in default throughout the action.

Plaintiffs filed a reply denying the free-will consent and approval of the will by Susan E. Tobias, and alleged that during her lifetime she had been wholly submissive to and dominated by the will of her husband, and that she always meekly obeyed him without question and without any opinion of her own, and that it was her uniform custom to sign all papers, deeds and documents submitted to her by Cyrus without explanation or inquiry concerning their contents. It was also alleged that Susan did not understand the contents and effect of her written consent appended to the will of Cyrus.

On these issues the cause was tried. There was some evidence tending to prove plaintiffs' allegations in their first cause of action, but it was neither strong nor convincing, and the trial court found against the plaintiffs. Its finding and judgment on the first cause of action reads:

"The court finds that the property in question, to-wit: the south half of section 17, township 20, range 8, Rice county, Kansas, west of the 6th P. M. [the home place] passed under the will of Cyrus Tobias by reason of Susan E. Tobias having consented thereto; that plaintiffs are not entitled to have said property partitioned among the heirs of Susan E. Tobias."

This is the judgment appealed from in case No. 24,841. Susan's *prima facie* valid consent to the will which made disposition of her property and her written acceptance of the portion of her husband's estate devised to her in lieu of the much larger estate which would have devolved on her under the statute of descents was not overthrown. Consequently the written consent of Susan stands for whatever legal import it carries, and on that question the law is reasonably clear and the decisions nearly uniform, as indeed counsel for appellants frankly concede. The rule is that if a testator devises property not owned by him, but owned by a devisee or legatee under the will of such testator, and such devisee or legatee accepts a devise or legacy bestowed upon him by the will, he thereby in effect renounces his right of ownership in the property which the testator has assumed to make of it, and confirms and ratifies the testamentary disposition made of it by the testator. (40 Cyc. 1893.)

In 40 Cyc. 1959, it is said:

"The doctrine, which is purely equitable, and was originally derived from the civil law, finds its most frequent illustration in the case of wills, the principle being that one shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will."

See, also, *Chilson v. Rogers,* 91 Kan. 426, 137 Pac. 936; and excerpt from *Morrison v. Bowman,* 29 Cal. 337, quoted in *Compton v. Akers,* 96 Kan. 229, 150 Pac. 219; 2 Alexander on Wills, 1178 *et seq.;* 4 Schouler on Wills, 6th ed., § 3189; 2 Woerner on American Law, 2d ed., *1015 *et seq.*

Since the evidence was insufficient to overthrow Susan's written consent to the provisions of the will made in her behalf, that consent not only bound her but it bound all whose rights had to be claimed through her. The wife's written consent in conformity with the statute has the same effect as the widow's election after the testator's death. (Gen. Stat. 1915, § 11790; *Keeler v. Lauer,* 73 Kan. 388, 395, 396, 85 Pac. 541; *Chilson v. Rogers,* supra, 426, 430; *Erickson v. Robertson,* 116 Minn. 90; 37 L. R. A., n. s., 1133 and note.) It has been held that where a husband makes a will disposing of all his property, without any provision therein for his wife, and the wife gives her consent thereto in writing, the will is valid and cannot be overthrown by the wife's descendant heirs at law. (*Hanson v. Hanson,* 81 Kan. 305, 105 Pac. 444.) Nor is there any hardship in this doctrine. The devolution of a man's property at his death is wholly a matter of statute; it is governed by legislation—the statute of wills or the statute of descents and distributions. Moreover, in this case, although the title to the home place was in the wife, it was a perfectly natural thing for the husband and wife to agree that the home place, and all the other lands of Cyrus, in all of which Susan had a wife's inchoate interest, should be held intact for the benefit of the grandchildren, after sufficient provision was made for Susan if she should survive her husband, and since Susan consented to the testamentary disposition of all these lands—her own and her inchoate half interest in all the lands of Cyrus—it will have to stand.

In view of the foregoing, the trial court's conclusion and judgment on the first cause of action was correct.

Turning now to the matters presented in case No. 24,707, plaintiffs point out certain limitations placed by the will upon the life estate devised to plaintiffs and to their brother and sister and step-

brother and stepsister, arguing that these have the effect of nullifying it. It is argued that the will passed no title in the estate to the devisees but only in the rents and profits, which would be mere personal property. Another limitation inconsistent with the creation of a life estate, urged by plaintiffs, is the power conferred on the executor to sell some of the realty and reinvest the proceeds in other property. Another restriction is that the six beneficiaries of the life estate shall not sell or encumber the real estate or their interests therein. From these limitations it is argued that the six beneficiaries acquired no estate in the realty, and consequently the remainder estate attempted to be devised to the grandchildren has no precedent particular estate to support it, and must therefore fail. In support of this, quite respectable authorities are quoted. (Tiedeman on Real Property, 3d ed., § 296; 21 C. J. 988; 23 R. C. L. 484, 485.)

The cleverness of this reasoning cannot be denied, but in our opinion the testator did create a precedent particular estate, a trust estate for the benefit of the six sons and daughters; with power in the executor to sell part of the trust estate and reinvest the proceeds and hold the same as trustee. The trustee was authorized to sell and "make good title," and in the acquisition of substituted property it should be "taken in the name of my executor, as trustee." And while the grants to the six beneficiaries are characterized in the will as a life estate in the net rents of the home place, and as a life estate in the other lands, yet elsewhere in the will the beneficiaries are designated as legatees, which more nearly defines their status. They were in effect annuitants, for the will provides:

"Out of the rents and issues of said real estate, there shall be first paid annually, by my executor, all taxes, charges and assessments thereon, and the residue of all rents, issues, profits and proceeds thereof shall be divided equally share and share alike, between and among the six legatees above, in this paragraph named."

We conclude, therefore, that there was neither uncertainty nor illegality in the testamentary grant to the six beneficiaries and the demurrer to the second cause of action was properly sustained.

On the fourth cause of action the plaintiffs make the point that the grandchildren had no concern with the personal estate which was bequeathed to Edwin, Katie and Valentine. This point is good, but it does not dispose of the matter. Neither does the fact that Edwin, Katie, Valentine, and Emma Mason made default both as

to pleadings and defense, although that fact should be taken into account in the matter of costs. Edwin, as executor, did challenge the sufficiency of the fourth cause of action by demurrer. And when the scope of the executor's duties is considered—to preserve the properties, to rent them, to pay the taxes, to divide the proceeds, to sell certain lands with the sanction of the probate court, to reinvest the proceeds, to pay all lawful charges on the estate out of the personal estate, which would include making report of income and paying federal and state inheritance taxes out of the personal estate as well as taxes on the personal estate itself, and finally to see to it that the personal estate was not dissipated or lost by failure to defend ill-founded claims like that of plaintiffs and eventually to divide and distribute it among the three beneficiaries, it would seem that the executor's demurrer properly and sufficiently invoked the trial court's ruling on this fourth cause of action.

Did the fourth count state a cause of action? Did the fact that Cyrus, after venting his disapproval of plaintiffs' marriages and his prejudice against their husbands, later become reconciled to these plaintiffs' marriages and came to regard their husbands with esteem and that he frequently declared that plaintiffs would share equally in his personal estate with his other children—did these facts, conceded by the executor's demurrer, operate to revoke that portion of the will which made disposition of the personal estate? No case is cited by plaintiffs which would support an affirmative answer to the question. Doubtless many a father has felt disapproval at a daughter's marriage and a prejudice against her husband, and has made a will wholly or partly disinheriting her on that account, and yet when the lapse of time has shown the marriage to be a happy one and the daughter's husband an honorable and useful citizen, has altered his attitude towards his daughter; but in order to give effect to such altered attitude he must act upon it and revoke the will by cancellation or codicil; and a mere intention or avowed purpose so to do, wholly unaccompanied by some act constituting revocation or supersession, will not suffice to impair the will. Our statute (Gen. Stat. 1915, § 11793) does contemplate the revocation of a will by implication of law arising from subsequent charges in the condition or circumstances of the testator, but the testator's altered attitude towards plaintiffs' marriages and towards their husbands cannot be fairly said to constitute such changes in the condition or circumstances of the testator

Aten v. Tobias.

as the statute intends. In *Jones v. Moseley et al.*, 40 Miss. 261, the fourth headnote reads:

"S., in his will, disinherited M., one of his children, to whom at the time he was unfriendly. Afterwards S. became reconciled to M., made no alteration in his will, and on his death-bed declared he wanted all of his children to be equal. *Held*, That the change in the feelings of S. to N, imposed no new testamentary duties, and did not revoke his will."

In the opinion, it was said:

"No case has been brought to our notice, nor have we been able to find one, where the doctrine of implied revocation has been applied to a case of mere change of feelings by the testator towards a party, subsequent to the date of the will, without a substantial change of circumstances, producing new obligations; and we think that such a case would not be reconcilable with the principle on which the doctrine rests. It is true, that feelings of affection from a parent to a child are a high moral duty, and that a change from feelings of animosity to those of fondness and attachment is highly commendable. But this alone is not such a change of his condition, and such a ground of new obligations and duties, as to come within the principle on which the doctrine is founded; for the alteration of the material condition of the testator is the basis of the rule, and the matter of personal feeling is but a secondary and incidental consideration, which, by itself, would not justify the application of the doctrine."

See, also, *Vanek v. Vanek*, 104 Kan. 624, 626, 627, 180 Pac. 240; 40 Cyc. 1198; 28 R. C. L. 187.

Coming now to the final question: Did the great increase in the personal estate operate to revoke the bequest of it? In 1913, when the will was executed, the personal property of Cyrus was worth $8,000. At that time his wife was alive, and the will bequeathed to her $10,000, if she should survive him, to be paid out of the personal estate and any deficiency was to be paid out of the net income of his lands other than the home place. So the bequest of the personalty to Edwin, Katie and Valentine would have been only nominal if Susan had outlived Cyrus and if there had been no substantial increase in the personal estate.

The situation in 1913 therefore was: If Susan died before the testator, Edwin, Katie and Valentine would get $8,000 worth of personalty between them; if she outlived Cyrus, these three beneficiaries would get nothing by the grant of personalty. As the circumstances transpired, however, Edwin, Katie and Valentine will get about $90,000 in cash, bonds, notes and mortgages—$30,000 each. It must be kept in view, however, that this $90,000 in personalty was not brought about by a change in the nature of Cyrus'

property, as by a sale of some of the lands devised by the will and a consequent accumulation of cash and reinvestment into bonds, notes and mortgages—if that fact would make a difference. This $90,000 is merely the savings derived from the income of Cyrus between 1913 and 1921. Just what "changes in the condition or circumstances of the testator" subsequent to the making of a will (Gen. Stat. 1915, § 11793) will amount to its revocation by implication of law may be difficult to define by inclusion and exclusion, but of course they would include those having that effect at common law such as marriage and birth of issue, except as modified by statute (*Shorten v. Judd,* 60 Kan. 73, 80, 55 Pac. 286; *Vanek v. Vanek,* supra; 1 Cooley's Blackstone, 2d ed., 376, 502; 40 Cyc. 1198). But by the weight of authority, they do not ordinarily include mere changes in the testator's circumstances regarding his property, and in part this subject is covered by statute:

"A conveyance, settlement, deed or other act of the testator by which his estate or interest in property previously devised or bequeathed by him shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property, but such devise or bequest shall pass to the devisee or legatee the actual estate or interest of the testator which would otherwise descend to his heirs or pass to his next of kin, unless in the instrument by which such alteration is made the intention is declared that it shall act as a revocation of such previous devise or bequest." (Gen. Stat. 1915, § 11788.)

Suppose a testator having a $10,000 farm and $10,000 in cash should devise the farm to his son and the cash to his daughter, but afterwards in his lifetime lose the farm because of defective title. Such a change in the subsequent condition and circumstances of the testator might be said to effect a revocation of the will by implication of law. It would be dictum to say so here even if we felt sure about it, which we do not, but the supposed case serves to show what might possibly fall within the rule, and does aid in measuring the cases to which the rule does not apply. In *Warner and wife v. Beach,* 70 Mass. (4 Gray) 162, a fourfold increase in the estate (and other changes) was held not to amount to an implied revocation. In *Hoitt v. Hoitt,* 63 N. H. 475, a threefold increase in the estate (and other changes) was held not to create an implied revocation. Indeed, the New Hampshire court held that the phrase "changed conditions and circumstances of the testator" had to do with changes in families' ties and had nothing to do with changes in property. It is unnecessary now for this court to commit itself

Aten v. Tobias.

unqualifiedly to the New Hampshire doctrine. Here there was an elevenfold increase in the personal estate in seven years between the making of the will and the death of the testator. But because of such unusual increase, the testator must necessarily have thought of the consequences to Edwin, Katie and Valentine who according to his will would possess this handsome fortune, and also of the consequences to Bessie, Nora, and Emma who would possess none of it unless he bestirred himself to alter the testamentary disposition already made of his personalty. But the testator was content to let it stand as made, and the courts may not meddle with it.

There is one matter, however, that should be corrected. The four defendants, Edwin, Katie, Valentine and Emma, seem to have been quite content that plaintiffs should prevail in this lawsuit except as to the personal estate, since they made default. Indeed, in a real sense, the action so far as the real estate was concerned was designed to free all the lands of Cyrus from any and all restrictions and limited devises and to expand into allodial fee the interests of the two plaintiffs and these four defendants; and the principal losers if plaintiffs had prevailed would have been the children of these six litigants. Whether Valentine's gain as a partitioning heir of Susan would have equalled his loss as a life cotenant in all the lands of Cyrus is not clear. The trust estate is amply able to pay these costs; the executor asked for a construction of the will; and if the costs are charged to the trust estate the grandchildren's interests will not be diminished or affected thereby. The burden of this litigation should fall upon the two plaintiffs who lose the lawsuit and upon the four defendants who, by their default, were willing that plaintiffs should prevail. For convenience such costs may be paid by the executor, at his discretion, and charged to the account of the six beneficiaries of the trust estate. (*Singer v. Taylor*, 90 Kan. 285, 133 Pac. 841; 91 Kan. 190, 137 Pac. 931; *Chapman v. Kennett*, 94 Kan. 535, 146 Pac. 1153.) Otherwise, the costs should be taxed proportionally to the defeated plaintiffs and to the individual defendants who made default.

· So modified, the judgment will be affirmed.