No. 28,979.

MAMIE LYTLE, *Appellant*, v. JOHN WADE, as an Individual and as Administrator of the Estate of W. M. Wade, Deceased, *Appellee*.

(284 Pac. 411.)

Opin-ion filed February 8, 1930.

*C. J. Sloop,* of Independence, and *Charles D. Welch,* of Coffeyville, for the appellant.

*W. M. Banks, O. L. O'Brien, Walter L. McVey* and *C. J. Bryant,* all of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal calls for an authoritative construction of the will of the late W. M. Wade, of Montgomery county, who died testate on February 8, 1925.

The testator was survived by his second wife, Susie I. Wade, and by a daughter, Mamie Lytle, and by two sons, John Wade and Ray Wade. These children were persons of maturity. The testamentary provision for the widow was satisfactory to her. The testator's considerable estate, consisting of farm lands, town lots and stock in the Wade Wholesale Company, was devised to the daughter and the two sons, subject to certain charges and provisions in favor of their stepmother. The inventory appraised the real property at some $40,000 and the testator's interest in the wholesale company at $44,042.24.

A sharp dispute over the relative burden of liability resting on the three children to satisfy those charges precipitated this lawsuit. To fully develop the points of controversy, space must be given to the main terms of the will. These read:

"2. I give, devise and bequeath to my wife, Susie I. Wade, the use and possession of lot one (1), block thirty-four (34), city of Independence, Kansas, and the household furniture, to be used and enjoyed by her so long as she remains unmarried, during her natural life, and I hereby direct that upon her marriage or her death, that said property be divided, share and share alike, between my children, John Wade, Ray Wade and Mamie Lytle.

"3d. Whereas, I am now the owner of an undivided sixteen-twenty-fifth (16-25) interest in and to the business known as the Wade Wholesale Company, and my son, John Wade, is the owner of a six-twenty-fifth (6-25) interest in said business, and my son, Ray Wade, is the owner of a three-twenty-fifth (3-25) interest in said business, which interests have already been advanced by me, it is therefore, my wish and desire and I hereby give, devise and bequeath to my son, John Wade, seven-seventy-fifth (7-75) interest in said Wade Wholesale Company, and to my son, Ray Wade, sixteen-seventy-fifth (16-75) interest in said Wade Wholesale Company, and to my daughter, Mamie Lytle, twenty-five-seventy-fifth (25-75) interest in said Wade Wholesale Company.

"4th. I give, devise and bequeath, share and share alike, to my children, John Wade, Ray Wade, and Mamie Lytle, lots six (6) and seven (7), block thirty (30), city of Independence, Kansas, together with all the appurtenances and buildings thereon with the limitation that said legatees, or their heirs, shall not sell, assign or dispose of their interest in and to said real

property for the period of ten (10) years from the date of the probation of this my last will and testament, and it is my wish and desire that the Wade Wholesale Company, shall have free rent and use of the part of the above-described property now occupied and used by it so long as said children are equally interested therein; should any one of said children and legatees dispose of his or her interest in and to said business, then said legatee shall be entitled to receive of the Wade Wholesale Company rent for his or her part of the building used by said company. The rents and income, less taxes, from the remaining part of said property, shall be divided monthly between said children.

"5th. I further give, devise and bequeath to my wife, Susie I. Wade, so long as she shall remain my widow, an income of one hundred dollars ($100) per month, to be paid monthly by my legatees, John Wade, Ray Wade and Mamie Lytle, and I hereby direct that said bequest shall become a charge upon the personal property known as the Wade Wholesale Company, as mentioned in paragraph 3, and I further direct that so long as my wife shall remain my widow the taxes upon the home place occupied by her, and the upkeep thereof, shall be paid by my children and shall also be a charge upon the business known as the Wade Wholesale Company, mentioned in paragraph 3.

"6th. In lieu of the bequest made to my wife, Susie I. Wade, of the monthly income of the sum of one hundred dollars ($100), I hereby give her the option, at the time of the probate of this will, of accepting the sum of five thousand dollars ($5,000) in cash, to be paid her by my other beneficiaries, John Wade, Ray Wade and Mamie Lytle, and I hereby direct that should she accept said sum of five thousand dollars ($5,000) in cash, then my other legatees herein, John Wade, Ray Wade and Mamie Lytle, shall be relieved of and released from paying her the sum of one hundred dollars ($100) per month out of the business known as the Wade Wholesale Company, as provided in paragraph 5 herein.

"7th. All the rest and residue of my property, both personal and real, I hereby give, devise and bequeath, share and share alike, to my children, John Wade, Ray Wade and Mamie Lytle, to be divided equally between them."

The testator's will was duly probated, and the defendant John Wade qualified as administrator with the will annexed. On May 27, 1927, he filed his account of administration down to December 31, 1926, to which his sister, Mamie Lytle, filed objections and exceptions. It was the claim and theory of the administrator that as his sister was given a greater share or interest in the Wade Wholesale Company than himself and his brother Ray, she should bear a proportionately larger share of the burden of satisfying the charge upon the Wade Wholesale Company in favor of the testator's widow. The administrator reasoned thus: The testator merely owned forty-eight seventy-fifths of the Wade Wholesale Company. He devised that interest to his three children in a ratio of 7, 16 and

25. Therefore the charges cast on the business were only intended to fall on forty-eight seventy-fifths of it, and the beneficiaries would have to pay according to the relative size of the shares devised to them. The plaintiff, Mamie Lytle, contended that the burden of satisfying that charge in favor of the widow rested on the three children alike, and that the charge was cast on the entire business of the company—not merely on forty-eight seventy-fifths of it.

The probate court sustained the objections to the administrator's method of apportioning the charges and directed the administrator to prorate them against the shares of Mamie, John and Ray equally.

John Wade as administrator and individually appealed to the district court. That court adopted the construction of the will contended for by John; made findings of fact and conclusions of law accordingly; and reversed the judgment of the probate court with directions how to proceed.

Mamie Lytle appeals, complaining of the judgment of the district court. Its soundness necessarily turns upon the proper construction of the will, and to determine that matter is now our task.

First, it should be observed that there is no ambiguity in the will, so its purport is to be learned from what it says. Passing for the moment the controversial matter, it will be seen that the general tenor of the will indicates a purpose on the part of the testator to treat his three children equally. When the widow dies or remarries the home and household furniture are to be divided between his three children, share and share alike. (Paragraph 2.) Other town lots are bequeathed to the three children, share and share alike, and certain net rents and income thereon are to be divided between them. (Paragraph 4.) The residuary estate is devised to the three children, share and share alike. (Paragraph 7.) The third paragraph of the will indicates the testator's purpose to vest in three children equal interests in the Wade Wholesale Company, and apparently to explain why he only devised to John seven seventy-fifths, and to Ray sixteen seventy-fifths, while he bequeaths twenty-five seventy-fifths to Mamie, he reminds them and everybody concerned that at some prior time he had given John a six twenty-fifths interest and Ray a three twenty-fifths interest in the Wade Wholesale Company "which interests have already been advanced by me." Whatever the facts might be touching the origin of those interests held by John and Ray, it is perfectly clear that

when the father made his will he held the view that the shares he had formerly given his sons were advancements which made it seem fair to him that they should be taken into account in the division of his estate between his three children, who held an equal place in his estimation of their worthiness. In paragraph 5 it is provided that the widow is to be paid $100 per month by the three legatees, John, Ray, and Mamie, and that the taxes and upkeep on the home place are to be paid by his three children. Again in paragraph 6 it is provided that if the widow should exercise the option of accepting $5,000 in cash in lieu of $100 per month, that sum is to be paid her by the three children, which will relieve them of paying her $100 a month out of the business of the Wade Wholesale Company.

To sustain the contention of the administrator and the view of the trial court it would be necessary to read something out of the will and read something into it. It would be necessary to eliminate from the will the significance and effect of the testator's declaration that the interests held by John and Ray at the time the will was executed had been *advanced* to them by the testator. The excision of that averment cannot be made without violating cardinal rules for the construction of wills. Even if such a declaration of the testator had been made outside the instrument itself it would have been admissible to prove his intention (*Martin v. Shumway,* 89 Kan. 892, 132 Pac. 993; *Packard v. Packard,* 95 Kan. 644, 149 Pac. 404, and citations). But his intention, his purpose, his point of view is plain on the face of the instrument. Where the will says the provision of $100 per month for the widow is to be paid monthly by the three legatees it would be needful to interpolate therein words to the effect that the monthly provision for the widow is to be paid by the three legatees *in proportion to the interests in the Wade Wholesale Company bequeathed to them by this will.* The will also says that the taxes and upkeep of the home place (which is to become the common property of the three children when their stepmother is done with it) shall be paid by the children. There the text would have to be amended to the effect that the taxes and upkeep should be assessed upon and paid by the children in the ratio of 7, 16, and 25, according to the proportionate interests in the Wade Wholesale Company devised to them. A similar interpolation would have to be made in the provision which gives the widow the option of accepting $5,000 in cash in lieu of the monthly allowance of $100. Whereas it says the $5,000 is to be paid by the other beneficiaries,

John, Ray and Mamie, additional words would have to be inserted fixing the proportionate parts of the $5,000 to be paid by the three beneficiaries at the ratio of 7, 16, and 25, respectively. We are compelled to hold that no such perversion of the plain recitals of the will is permissible.

The fact that the monthly provision for the stepmother and for the payment of taxes and upkeep of the home place is made a charge on the Wade Wholesale Company detracts not at all from the construction of the will contended for by appellant. It is the children who must pay. The Wade Wholesale Company is the source from which the wherewithal to pay shall come—the security for its payment. Viewing the prior interests of John and Ray as advancements by the testator—and his privilege to view them in that aspect cannot be gainsaid by these litigants, as we shall presently show—it seemed to the testator that the most practicable way his children could meet the widow's provision and the taxes and upkeep on the home place was to make those matters a charge on the Wade Wholesale Company. Having arranged matters so that the three children should have equal shares in the wholesale company, the satisfaction of the provisions for the widow and the home out of the finances of that business would fall most conveniently on them.

But it is emphatically urged that when the will was made the testator did not own the entire business of the Wade Wholesale Company, he having already given John six twenty-fifths of it and Ray three twenty-fifths; that all the father had to devise was the remaining sixteen twenty-fifths or forty-eight seventy-fifths of it. Even so, the power of the testator to do the very thing he set out to do—to make the provisions for the widow and the home place a charge upon the entire business of the Wade Wholesale Company— cannot be challenged by these beneficiaries. They accepted the benefits of the will; therefore they must acquiesce in the burdens which accompany those benefits. This is settled law. In *Aten v. Tobias,* 114 Kan. 646, 220 Pac. 196, the testator, who had a considerable estate, devised a life estate in part of it to his wife, similar estates to his children and a stepson, and a remainder to his grandchildren, with miscellaneous directions to his executor about the payment of taxes, charges, and assessments cast on the estate as a whole. The principal devise of realty to the wife was a half section of land whereon was situated the family domicile, and the title to

that land had long been vested in the wife. However, the testator devised it to the wife and she accepted the will in all its terms. Litigation over the construction and terms of the will afterwards arose in which the validity of that devise was drawn in question. This court held:

"Where a testator devises property the title to which is held by his wife and she gives her written consent to such testamentary disposition of it, the wife thereby in effect renounces her right of ownership in the devised property and bars all persons whose rights thereto must be claimed under and through her." (Syl. ¶ 1.)

In the body of the opinion this rule of law was fortified with ample authorities which might be indefinitely multiplied. See note to *Hoggard v. Jordan*, 140 N. C. 610, 4 L. R. A., n. s., 1065-1073; 1 Jarman on Wills (6th ed.) 532. In 2 Underhill on the Law of Wills, 1000, it is said:

"The doctrine of election as applied to the law of wills simply means that he who takes under a will must conform to *all* its provisions. He cannot accept a benefit given by the testamentary instrument and evade its burdens. He must either conform to the will or wholly reject and repudiate it. No person is under any legal obligation to accept the bounty of the testator; but, if he accepts what the testator confers upon him by his will, he must adhere to that will throughout all its dispositions. If he shall take a beneficial interest in the estate under the will, equity will hold him to his choice, and it will be conclusively presumed that he intends thereby to ratify and conform to every part of it. This presumption of a ratification of the will on his part is applicable though the testator has attempted to give away property belonging to him. He cannot accept the instrument so far as it benefits him and reject it so far as it gives away his property, for it is against equity and good conscience that a person should hold property given or devised by virtue of the will which he could not do without it, and at the same time defeat some of its provisions by asserting his paramount claim to that which, by the will, was intended to benefit others. He must therefore either wholly comply with the will or wholly repudiate it and adhere to his paramount claim."

Oral and documentary evidence was introduced at the trial, but as we have determined that the will was not in any sense ambiguous that evidence was not important. The articles of partnership executed January 25, 1912, whereby John and Ray Wade acquired their original interests in the Wade Wholesale Company, contained this preliminary recital:

"Whereas, W. M. Wade is the sole owner of the wholesale grocery business now conducted by him under the name of W. M. Wade, and is desirous of granting to John W. Wade and J. Raymond Wade, his sons, an interest in said business, and taking them into a partnership with him in said business."

The bill of sale executed contemporaneously with the articles of partnership recited that those interests were conferred on John and Ray "in consideration of love and affection and for services performed by each of my sons."

These recitals in the articles of partnership and in the bill of sale are in accord with the declaration in the will of the testator that those interests were advancements to John and Ray notwithstanding the words "for services performed" also appear in the bill of sale. Dutiful sons and daughters perform many services for their parents, and gifts and advancements are such none the less although in making them the parent expresses his appreciation of such services either in the instrument evidencing the gift or otherwise. The evidence which we hold to have been quite immaterial did show how faithful and dutiful to their father and zealous in building up the business of the Wade Wholesale Company John and Ray had been. The evidence for the daughter which the trial court ignored or rejected as immaterial was in the form of depositions and therefore entitled to whatever significance this court would attach to it regardless of what weight the trial court saw fit to accord it. (*Record v. Ellis,* 97 Kan. 754, 156 Pac. 712; *Linn v. Blanton,* 111 Kan. 743, 749, 208 Pac. 616; *Federal Agency Investment Co. v. Baker,* 122 Kan. 460, 252 Pac. 262.) That evidence showed how deeply the testator was attached to his daughter, and that he had said he merely refrained from giving her money in his lifetime "because he felt he could make more money with that money in the business for her," and he repeatedly said he had made arrangements whereby all his children would share equally in his property. So if the will of W. M. Wade were ambiguous and in need of extraneous testimony to clarify its terms, the documentary evidence and the depositions would seem to constrain a judgment in favor of the appellant, Mamie Lytle.

It follows that the judgment of the district court must be reversed and the cause remanded with instructions to reinstate the order and judgment of the probate court to the effect that the provisions made in the will for the widow of the testator and for the payment of the taxes and upkeep of the home place are imposed on the three children of W. M. Wade equally and are a charge on the entire assets and business of the Wade Wholesale Company, and not limited to forty-eight seventy-fifths of that business as applied in the administrator's account for December 31, 1926.

The judgment is reversed.