No. 27,873.

KNUT WILLIAM KNUTSON, also Known as KNUT WILLIAM HERMAN, *Appellant,* v. ALEX HEDERSTEDT et al., *Appellees.*

(264 Pac. 41.)

SYLLABUS BY THE COURT.

1. ASSIGNMENTS—*Operation and Effect—Rights Passing.* The text of an assignment set out in the opinion examined and held not fairly susceptible of an interpretation that it did not pass to the assignee a certain future interest in property conferred on the assignor by his father's will.

2. SAME — *Property Assignable — Future Contingent Interest.* Rule followed that a future contingent interest in property may be the subject of legitimate barter and sale in this jurisdiction.

3. SAME—*Rights Passing by Assignment.* A father devised as follows:

"Eighth: I give and bequeath to my son, Carl Johan Knutson, fourteen (14) per cent of all such proceeds [of testator's estate] and money, and I do hereby direct that my executors invest said bequest . . . [in] as many acres of good farm land in Saline county, Kansas, as said bequest can buy, and deed the same to my said [son] . . . for his sole use and benefit during the term of his natural life, and providing in the deed therefor that

Assignments, 5 C. J. pp. 851 n. 29, 852 n. 45, 854 n. 50, 914 n. 54; 33 L. R. A. 266; 25 L. R. A. n. s. 436; 17 A. L. R. 601; 2 R. C. L. 606.

if my said son Carl Johan Knutson die leaving children, then said land shall go to and become the property of his children; but if he dies leaving no children, then the said land shall go to and become the property of my heirs and assigns then living, to be divided equally."

The executors purchased an estate and vested it in the son in strict conformity with the directions of the devise. The son died single, without children or issue. During this son's life another son and heir of the testator, plaintiff herein, assigned all his "right, title and interest in all money and property due and coming" to him under the last will and testament of his father. *Held,* that plaintiff's assignment passed to his assignee all his interest in the lands purchased by the executors in accordance with the directions of the will as set out above.

Appeal from Ottawa district court; DALLAS GROVER, judge. Opinion filed February 11, 1928. Affirmed.

*William S. Norris,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to quiet title, and it comes to this court as an appeal from a judgment denying plaintiff's claim of interest in certain Ottawa county lands.

The main facts were these: Heretofore, one Knut J. Knutson, late of Saline county, died testate, devising a life estate in real and personal property with power of diminution to his wife, and providing that after her death his executors should convert all his remaining property into money and divide it as follows: To his four daughters, Hannah, Ella, Hilda and Sophia, 19 per cent each; and to the plaintiff as follows:

"Ninth: I give and bequeath to my son, Knut William Knutson ten (10) per cent of all such proceeds and money."

To another son, Carl, the devise read:

"Eighth: I give and bequeath to my son, Carl Johan Knutson, fourteen (14) per cent of all such proceeds and money, and I do hereby direct that my executors invest said bequest, bequeathed to Carl Johan Knutson, in real estate, buying as many acres of good farm land in Saline county, Kansas, as said bequest can buy, and deed the same to my said [son] Carl Johan Knutson, for his sole use and benefit during the term of his natural life and providing in the deed therefor that if my said son Carl Johan Knutson die leaving children, then said land shall go to and become the property of his children; but if he dies leaving no children, then the said land shall go to and become the property of my heirs and assigns then living, to be divided equally."

The testator outlived his wife, so that on his death, on May 27,

1918, the executors (one of whom was this defendant) took charge of his estate and administered it. Certain Ottawa county lands were purchased for Carl and title was eventually vested in him in literal accord with the terms of his father's will.

Shortly after his father's death, this plaintiff, for a valuable consideration executed to defendant's assignor, the following instrument:

"ASSIGNMENT.

"Know all men by these presents, That whereas, Knut J. Knutson, late of Saline county, Kansas, deceased, leaving and bequeathing unto me by and under his last will and testament certain per cent and share of all his money and of all his real property after same having been converted into money; and

"Whereas, In consideration of $1 and other valuable consideration to me paid by C. J. Anderson, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer and deliver all my right, title and interest of all money and property due or coming to me under the last will and testament of my father, Knut J. Knutson, unto the said C. J. Anderson, her executors, administrators and assigns forever.

"In witness whereof, I have hereunto set my hand this 23d day of July, 1918.

"KNUT WILLIAM HERMAN,

"formerly      KNUT WILLIAM KNUTSON.

"Acknowledged  . . . Notary Public."

On June 11, 1922, plaintiff's brother, Carl Johan Knutson, died single, intestate, and without issue. The controlling question in this lawsuit was whether the assignment conveyed plaintiff's interest in the Ottawa county lands purchased for Carl, or whether it only conveyed the ten per cent interest specifically apportioned and bequeathed to plaintiff in the ninth paragraph of his father's will. All these matters were comprehensively stated in plaintiff's petition. Defendant's demurrer thereto was sustained, and this ruling is assigned as error.

Plaintiff contends that his assignment of July 23, 1918, set out above, was not susceptible of an interpretation that it conveyed anything except the ten per cent interest specifically bequeathed to him, and that his future contingent interest in the lands purchased by the trustees for the benefit of Carl did not pass to defendant's assignor by that instrument.

There was no evidence in this case; it went out on a demurrer; plaintiff's petition did not allege that the assignment contained a mutual mistake, nor did plaintiff ask to have it reformed. Plaintiff's petition cannot be strengthened by intimation of illegality

gratuitously and exclusively volunteered in plaintiff's brief. Discussing the assignment his brief proceeds thus:

"There was nothing to prevent the appellee, Alex Hederstedt, when he went to Illinois to purchase for himself the interest of appellant in his father's estate, from describing in the instrument which he secured from appellant any interest which appellant might subsequently acquire under the eighth paragraph of the will, at least to such an extent that an intention to assign such interest could be inferred from the language used, so as to purge himself from the justifiable suspicion which must now exist, that he not only did not intend to describe such interest, but that he deliberately refrained from so describing it. It would have been very simple for him to use, in a very few words, language sufficient to express such an intention, in such a way that appellant would have been advised of what he was being requested to sign and in such a manner that appellees would not now be required to rely upon technical constructions of such simple words as 'due' or 'coming.'"

Perhaps so. But neither was there anything to prevent this plaintiff from alleging in his petition that the defendant, in acquiring title to plaintiff's interest in this property, committed a breach of his duty as executor. Nothing to that effect is alleged nor is it claimed that the assignment or any part of it is void on that account. Indeed, it was conceded below, and not denied here, that the assignment is valid so far as it purported to convey plaintiff's interest under the *ninth* paragraph of his father's will. His contention below was not that the assignment of his interest under paragraph *eight* was void because of the rule forbidding executors to acquire a personal interest in the estate under their charge, but merely that by the terms of the instrument itself plaintiff's interest in the lands purchased by the executors did not pass by the assignment.

One of plaintiff's contentions is that the title to the land purchased by the executors vested in Carl absolutely, regardless of the directions of the will under which the purchase was made, and regardless of the terms of the conveyance which conformed thereto; and that in consequence this plaintiff and his four sisters succeeded to the title as heirs of Carl. We think not. To look no further than the deed itself, the grant was to Carl and to his children if he had such; but failing such, there was a grant over *to the other heirs of the father or their assigns* living at Carl's death. The text of the father's will is clear. It provides for a life interest in Carl in whatever lands the executors should buy for Carl's benefit, and the will

directed that the deed of purchase should also provide that failing issue of Carl—

"Then the said land shall go to and become the property of my heirs and assigns then living."

The granting clause of the deed recites:

"But if he [Carl] die leaving no children, then said real estate shall go to and become the property of the heirs and assigns then living of K. J. Knutson . . . as provided in the eighth section of . . . [his] last will and testament."

It will be noted that the will and deed both contemplated the possibility that "assigns" of the heirs of the testator might be concerned in the property purchased for Carl's benefit.

The assignment of 1918 under which defendant claims cannot be fairly limited to mean that only the interest bequeathed in the ninth paragraph of the father's will passed to the assignee. In literal terms the plaintiff assigned "all my right, title and interest of all money and property due or coming to me under the last will and testament of my father, Knut J. Knutson." Not his interest under the ninth paragraph alone, but all his interest, which included his interest under the eighth paragraph as well. There is a rule of law—and we have local statutes to the same effect—that when property is the subject of a devise or grant, all the legal and equitable estate of the testator or grantor pertaining thereto shall be construed to pass unless by express reservation or by necessary implication an intention to dispose of a less estate shall clearly appear. (R. S. 22-258; 67-202; 77-201, subdiv. 8; 5 C. J. 944.)

In *Miller v. Miller*, 91 Kan. 1, 4, 136 Pac. 953, it was said:

"The words 'conveyances of land,' mean, of course, the land itself in fee simple absolute. The words, 'any other estate or interest therein,' include estates of freehold and less than freehold, of inheritance and not of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invent, consistent, of course, with public policy."

It must therefore be held that the assignment conveyed the interest of plaintiff under the eighth paragraph of his father's will and also under the terms of the deed, so far as the matter is governed by the language of the assignment; but the question remains whether plaintiff had an assignable interest under the eighth paragraph of his father's will when that assignment was executed, July 23, 1918. Carl did not die until four years thereafter. If he had

married and had left children, they would have taken the property
purchased by the executors under the eighth clause of the will. So
by the terms of the will, and of the deed also, plaintiff was only a
contingent remainderman. Can one who holds only a contingent in-
terest in property sell and convey that interest to a stranger? By
the old law and the old decisions he could not do so. (5 C. J. 852;
Kales Estates, Future Interests, 2d ed., §§ 96, 320.) However, else-
where in Mr. Kales' valuable treatise it is said:

"§ 369. Equity was not satisfied with the feudal distinction between re-
versions and vested remainders on the one hand and contingent remainders
on the other as a test of alienability or inalienability. It was unwilling that
all transfers of reversions and vested remainders should be given effect. It
was equally unwilling that all transfers of contingent remainders should fail.
Accordingly it developed its own rules for setting aside transfers or reversions
and vested remainders and for giving effect to transfers of contingent re-
mainders.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"§ 371. . . . So far as alienability is concerned, one is from a modern
rationalistic point of view, the same as the other. Barring the rule of de-
structibility, one is as uncertain to take effect as the other. Yet by the
feudal land law one is alienable and the other is not. Whatever policy there
may be in favor of safeguarding the holders of contingent remainders by con-
tinuing the rule of inalienability, applies equally to the defeasible vested re-
mainder.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"§ 374. The expectancy of one as the heir of a living person may be re-
leased to the ancestor and in equity such a release will be enforced for the
benefit of the other heirs. The expectancy of such an heir is assignable in
equity to a stranger who may upon the death of the ancestor maintain a bill
for specific performance to compel a conveyance. . . . It should not be
open to doubt that in Illinois the attempt to transfer, upon a proper considera-
tion and where there were no elements of unfairness, a contingent remainder,
would operate as an assignment in equity and that specific performance would
be given when the remainder vested." (See, also, extended notes in 33 L.
R. A. 266 et seq.; 17 A. L. R. 601 et seq.)

It is no longer open for debate in this jurisdiction that any sort
of right or interest in property, vested or contingent, may be the
subject of legitimate barter and sale, unless such a construction of
the right or interest would be subversive of the clear intention of
the testator or grantor through whom the right or interest is de-
rived. (*Clendening v. Wyatt*, 54 Kan. 523, 38 Pac. 792; *Miller v.
Miller*, supra; *Markham v. Waterman*, 105 Kan. 93, 181 Pac. 621;
*Miller v. Sooy*, 120 Kan. 81, 242 Pac. 140; *Platt v. Woodland*, 121

Kan. 291, 246 Pac. 1017; 5 C. J. 851, 854, 855; 2 R. C. L. 606; 1 R. C. L. Supp. 586.)

One feature of *Clendening v. Wyatt*, supra, is particularly analogous to the one now before us. By the terms of a certain instrument, Clendening and wife quit-claimed "his undivided portion of what he may be entitled to of his mother's estate, to the said Augustus Wyatt, his heirs and assigns." In upholding this quit-claim conveyance, the court said:

"It is manifest, however, from the language used that Clendening was bargaining about a future interest which he did not possess at the time, and which he expected to acquire at the death of his mother. In the latter part of the contract it is recited, that 'the said John Clendening and Kate, his wife, do hereby (in consideration as above), release, remise and forever quit-claim to his undivided portion that he may be entitled to of his mother's estate to the said Augustus Wyatt, his heirs and assigns.' He had no interest in the land at the time the contract was made. His mother was then alive, and from the face of the contract it distinctly appears that he was contracting away the undivided and future interest which he expected to acquire from his mother's estate at the time of her death. There is a specific description of the land in controversy in the contract, showing that the property now sought to be recovered was within the contemplation of the parties when the contract was made. Such a contract, based upon ample consideration, honestly and fairly made, with one who is capable to contract, may be enforced in equity." (p. 526.)

In *Markham v. Waterman*, supra, it was said:

"Of course, one who acquires a remainderman's interest in property . . . may get little or nothing for his bargain. He may acquire it, however, for no rule of public policy is violated in such a transaction." (p. 98.)

In view of what has been said and quoted above this court is bound to hold that the interest of plaintiff in the lands purchased by the executors for the benefit of plaintiff's brother Carl in conformity with paragraph eight of the father's will·was a legitimate subject of a bargain and sale between plaintiff and defendant's assignor, at the time the assignment was made in 1918; and that interest passed by the fair import of the language of that assignment.

The other arguments urged against the judgment have been duly considered, but suggest nothing to warrant further discussion.

The judgment is affirmed.

BURCH, J., not sitting.