610

No. 28,233.

THE FARMERS STATE BANK OF CHASE, *Appellant,* v. DALE HOW-
LETT, a Minor, by PAUL R. NAGLE, Guardian ad litem, et al.,
*Appellees.*

(270 Pac. 605.)

Opinion filed October 6, 1928.

W. D. *Jochems* and J. *Wirth Sargent,* both of Wichita, for the appellant.
*Paul R. Nagle,* of St. John, and W. W. *Stahl,* of Lyons, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to foreclose a mortgage given by Blanch Howlett and Roy Howlett, her husband, to the plaintiff to secure the payment of a promissory note for $2,000. Judgment was rendered in favor of the defendants on the evidence introduced by the plaintiff, which appeals.

Facts established by the pleadings were as follows: William C. Willard in his lifetime owned the real property in controversy. On May 20, 1909, he executed a will, which contained the following provisions:

"I give and bequeath to my beloved wife, Mary, all of my personal property to be hers absolutely. I further bequeath to my wife, Mary, all of my real estate for her sole use and maintenance during her natural lifetime.

"After her death, I will and direct that the distribution of my real estate be made as follows: To my granddaughter, Blanch, I give and bequeath the north half of the northeast quarter of section twelve (12), township nineteen (19), range ten (10) west of the sixth P. M., and after her death to her children; if there be no living children at the time of her death, then I give and bequest said [same] to my son Fred.

"All of the rest of my said real estate I give and bequeath to my son Fred, after the death of my wife."

William C. Willard died September 24, 1909. His wife, Mary Willard, died May 8, 1927. His granddaughter, Blanch Howlett, died October 4, 1924. She left surviving her the defendants, Dale Howlett, Chester Howlett, and Velma Fern Howlett, minors (her children). They were in possession of the property at the time this action was commenced.

Facts were disclosed by the evidence as follows: The note and mortgage sued on were executed by Blanch Howlett and Roy Howlett, her husband. All of the children of Blanch Howlett were born after the death of William C. Willard. The children were all minors, for whom Paul R. Nagle was appointed guardian *ad litem*.

The plaintiff contends that the will created an estate tail in Blanch Howlett. If this contention fails, the judgment must be affirmed.

In *Gardner v. Anderson, Trustee,* 116 Kan. 431, 227 Pac. 743, an estate tail was defined as follows:

"An estate tail or fee tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or devisee, and in which the regular and general succession of statutory heirs at law is cut off." (Syl. ¶ 3.)

To the same effect is *Gardner v. Anderson, Trustee,* 114 Kan. 778, 781, 227 Pac. 743, and authorities there cited.

The will in the present case did not fix a line of inheritable succession limited to the issue of the body of Blanch Howlett, the granddaughter of the testator. The will gave the land to her for life and after her death to her children, but if she should not have any children then the land should go to Fred, a son of the testator. That took the estate here conveyed out of the class known as estates tail.

*Purl v. Purl,* 108 Kan. 673, 197 Pac. 185, gives some support for the conclusion here reached. This court there said:

"The will of a testator who resided in Illinois gave land in Kansas to his son, 'to have during his life, and at his death it goes to his children, if he has any living; if not, it goes to his brothers and sisters or their heirs.' *Held,* the remainder was contingent until death of the life tenant, whether the will be interpreted according to the law of Illinois or according to the law of Kansas."

However, it should be noted that *Purl v. Purl* did not discuss the law of estates tail.

The old rule of law known as the rule in Shelley's Case, taken from 1 Coke 104, is found in 24 R. C. L. 887, and reads as follows:

"When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately to his heirs in fee or in tail, 'the heirs' are words of limitation of the estate, and not words of purchase."

## Continuing the discussion of the rule, 24 R. C. L. 892 says:

"The word 'limitation' as used in the rule in Shelley's Case must be under· stood, not in the sense of restriction, but as a word describing the extent or quality of the estate conveyed; and 'purchase' as any means of acquiring property other than by descent. With this understanding of the meaning of the terms 'limitation' and 'purchase,' the rule announced in Shelley's Case would read, 'When the ancestor by any gift or conveyance takes an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, that always in such cases "the heirs" are words describing the extent or quality of the estate conveyed, and not words designating the persons who are to take it.' "

## In 10 R. C. L. 659 the following language is found:

"Whenever it appears in the instrument creating the estate that it was intended that the issue of the first taker should take by inheritance in a direct line, and in a regular order and course of descent, so long as his posterity should endure, and an estate in fee or in tail is given in remainder, upon an indefinite failure of issue, then the estate first created will be construed to be an estate tail. But if, on the other hand, the limitation over is not postponed until an indefinite failure of issue, but on failure of children only, or on failure of issue within a given time, it is well settled that the estate will not belong to the class known as the estate tail."

## In 28 R. C. L. 250 it is said:

" 'Children' is a technical word, primarily one of purchase, not of limitation, and imports only immediate descendants." (See, also, 2 Words and Phrases, 1st series, 1139; 1 Words and Phrases, 2d series, 667, 681; 11 C. J. 753.)

## In 24 R. C. L. 894 the author says:

"According to the prevailing view in this country, the rule in Shelley's Case is a rule of law and not merely a rule of construction. Consequently it may operate to defeat a testator's intent, and for this reason it is strictly construed."

Under the will, the children of Blanch Howlett took as purchasers, beneficiaries under the will, not as her heirs in the event that they survived her. Taking as purchasers, their interest could not be alienated by any conveyance that Blanch Howlett might make. This conclusion accords with section 22-256 of the Revised Statutes, which reads:

"When lands, tenements or hereditaments are given by will to any person for his life, and after his death to his heirs in fee, or by words to that effect,

the conveyance shall be construed to vest an estate for life only in such part taken, and a remainder in fee simple in his heirs."

The judgment is affirmed.