No. 32,269

NATIONAL LIFE INSURANCE COMPANY, Montpelier, Vermont, *Appellee,* v. LUELLA WATSON, ELMER WATSON, ERNEST CHILDERS, MAUDE WHITMORE, DAN U. WHITMORE, HATTIE O'LOUGHLIN, GUY O'LOUGHLIN, LETTIE WALTERS and JOHN WALTERS, *Appellants.*

(44 P. 2d 269)

Opinion filed May 4, 1935.

*R. L. Hamilton,* of Beloit, for the appellants.

*J. Arthur Myers, Byron M. Gray,* both of Topeka, and *George B. Young,* of Montpelier, Vt., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to foreclose a mortgage on 100 acres of Mitchell county land.

The only defense was interposed by seven grown children of the mortgagor, whose claims of interest were based on the following facts:

Martin Childers and Beatrice Childers, parents of the defendant interveners, who lived as husband and wife for fifty years, made a joint, mutual and reciprocal will, in which they devised to each other as survivor all their personal property and—

"III. We, as husband and wife, further direct and provide, as to our real property, and we do now give, devise and bequeath to each other as the survivor may be a life estate in and to all the real property of which we or either of us may die seized or possessed.

. . . . . . . . . . . . .

"V. We further direct and provide, subject always to the life estate in all

the real estate herein and hereby given, devised and bequeathed by us and either of us to the other as the survivor may be, we now do jointly, mutually and severally hereby give and devise the said real estate to our other sons and daughters, the same to be divided between them share and share alike, namely, Luella Watson, Ernest Childers, Edward C. Childers, Maude Whitmore, Hattie O'Loughlin, Claude Childers and Lettie Walters, . . ."

Some three years after the execution of this joint will Beatrice died. The will was probated and her surviving husband elected to take under its terms. He thereby acquired the personal estate of Beatrice, which included $1,000 in baby bonds. He thereby also acquired a life estate in 20 acres of land on which was the family domicile, the title to which stood in the name of Beatrice. Martin himself held the title to the 100 acres in controversy and to one or two other tracts of real estate.

Seven months after the death of Beatrice, Martin married his present wife. He and she borrowed $2,000 from a local mortgage company and mortgaged this 100 acres as security for its repayment. The note and mortgage passed into the hands of plaintiff, and default having occurred, foreclosure was instituted.

The children of Martin and Beatrice were let in to defend, and they pleaded their alleged respective interests under the joint will of their parents which had been probated, and under whose terms their father had acquired the entire estate of their mother, in consequence of which the seven interveners each claimed an undivided one-seventh interest in the property, subject to their father's life estate.

The trial court heard considerable evidence in the case, but eventually ruled that the joint will of Martin and Beatrice imposed no restriction upon Martin's right of alienation of any property owned by him; that plaintiff's mortgage was a first lien thereon; and that the answering defendants had no legal or equitable defense to plaintiff's action.

Judgment was entered accordingly, and the intervening defendants appeal, contending here, as they did below, that the joint will of Martin and his first wife was contractual, and bound him especially, since he elected to take under its provisions made in his behalf.

There is no gainsaying the soundness of these contentions, but just how far and to what extent do they affect the validity of plaintiff's mortgage? By the joint will Martin Childers impliedly agreed that whatever property he may die seized of shall pass under

that will to the seven children named in its fifth paragraph quoted above. He did not bind himself not to alienate or dispose of any of his property during his life as his own wants, needs or convenience might require. When Martin Childers joined in the execution of the mutual and reciprocal will of himself and his first wife, he did not thereby intend to disable himself to exercise dominion over his own property. Certainly he had a right to borrow the $2,000 sued for in this action. And the judgment creditor could certainly have subjected this particular 100 acres to execution sale to the satisfaction of its judgment without a mortgage lien thereon, since it was not the homestead of Martin and his second wife. They reside on the 20 acres on which he enjoys the life estate devised to him by his first wife.

We have not overlooked the many interesting cases which the industry of counsel for appellants has revealed for our perusal; but as was said in *Morse v. Henlon*, 97 Kan. 399, 155 Pac. 800, "there is no occasion for employing rules of judicial construction of a will in search of the testator's intention where such intention is expressed clearly and unequivocally in the instrument."

The joint will of Martin and Beatrice is still a perfectly good will. When in the fullness of time Martin is gathered to his fathers, the real estate of which he dies seized will pass to the seven children named in the fifth clause of the will, as both their parents intended.

If what we have said were insufficient to dispose of this appeal it could as conclusively be determined under the general rule that one who acquires any sort of interest in real property may rely on the record when he has no personal notice or knowledge of some outstanding interest in it. What would the most careful examination of the record title of this 100 acres have disclosed at the time this mortgage was executed? It would have shown clear title in Martin Childers—nothing whatever about the joint will of Beatrice and himself which had been probated, and which merely disposed of her property.

The judgment of the trial court was correct and it is affirmed.